UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HOMETOWN PIZZA, INC.                                               Plaintiff

v.                                              Civil Action No. 3:22-cv-20-RGJ

HOMETOWN PIZZA II, LLC                                          Defendants

* * * * *

## MEMORANDUM OPINION AND ORDER

Defendant Hometown Pizza II, LLC, ("Hometown II") moves to compel arbitration or in the alternative to dismiss Plaintiff Hometown Pizza, Inc.'s ("Hometown") Complaint. [DE 10]. Hometown moved for leave to file a surreply [DE 16], and Hometown II responded. [DE 17]. These matters are ripe. [DE 14; DE 15; DE 16]. For the reasons below, Hometown II's Motion to Compel Arbitration [DE 10] is **DENIED,** Hometown II's Motion to Dismiss [DE 10] is **DENIED,** and Hometown's Motion for Leave to File Surreply [DE 16] is **DENIED**.

## I.      BACKGROUND

Michael and Mary Foster ("Fosters") founded Hometown Pizza, Inc. and operate restaurants under the name "Hometown Pizza." [DE 1 at 3; DE 10-1 at 93]. In July 2010, Thomas Brown ("Brown") contracted with the Fosters to serve as Chief Operating Officer and Vice President of Hometown. [DE 1 at 4; DE 10-1 at 93-94]. At the same time, Brown and the Fosters signed the Limited Liability Company Operating Agreement of Hometown Pizza II, LLC ("Operating Agreement") creating Hometown II. [DE 1 at 4; DE 10-1 at 93-94; DE 10-5]. Brown received an 80 percent interest in Hometown II, and the Fosters each received 10 percent. [DE 1 at 4; DE 10-1 at 94; DE 10-5 at 163]. Hometown and Hometown II also signed an agreement in which Hometown II agreed to purchase supplies from Hometown and to pay a fee if the contract

1

were terminated ("Supply Facilitation Agreement"). [DE 1 at 4-5]. Hometown and Hometown II also signed a licensing agreement ("License Agreement") in which Hometown II received a license to use Hometown's intellectual property. [*Id.* at 5]. The restaurants also had a booklet outlining an arbitration process for workplace disputes ("Dispute Resolution Program"). [DE 10-1 at 95; DE 10-7; DE 14 at 241-42].

Hometown terminated Brown's employment in 2021, and subsequently terminated the Supply Facilitation Agreement and License Agreement. [DE 1 at 7]. Hometown alleges that Hometown II has continued to use its intellectual property. [*Id.* at 8-14]. Hometown and Brown are engaged in related arbitration. [DE 10-1 at 95; DE 14 at 241].

Hometown sued Hometown II, alleging federal and state trademark infringement and unfair competition, state law unfair and deceptive trade practices, and breach of contract. [DE 1 at 14-20]. Hometown also seeks injunctive relief and indemnification on its breach of contract claim. [*Id.* at 20-22].

## II.      DISCUSSION

### I.      Hometown's Motion for Leave to File Surreply [DE 16].

Hometown II argues that the Court should deny Hometown's motion for leave to file a surreply because Hometown II made no unique arguments in its Reply brief and Hometown is making unique arguments in its surreply. [DE 17 at 371]. Hometown did not reply.

"Although the Federal Rules of Civil Procedure do not expressly permit the filing of surreplies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). "As many courts

have noted, '[s]ur-replies . . . are highly disfavored.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.*; *see also, e.g.*, *Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply). Whether to permit a party to surreply is in the court's discretion. *See Key*, 551 F. App'x at 264 (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004)).

Here, the timing of the surreply is not troubling, as Hometown filed it within five days of Hometown II's reply. [DE 15; DE 16]. The argument Hometown raises in the surreply brief is that a quotation Hometown II relies on resulted from scrivener error. [DE 16-1 at 366-68]. The quotation is "Mr. Brown entered into a valid and enforceable contract with Hometown vis-à-vis the Hometown-II Operating Agreement." [DE 15 at 355; DE 16-1 at 366]. This quotation appears in Hometown II's Motion to Compel Arbitration. [DE 10-1 at 96-97]. Hometown II does not make novel arguments about this quotation in its reply brief. [*See* DE 10-1; DE 15]. Because Hometown II's reply "did not raise any new legal arguments or introduce new evidence," the Court will exercise its discretion to **DENY** Hometown's motion for leave to file a sur-reply. *Liberty Legal Foundation*, 875 F. Supp. 2d at 797.

## II.   <u>Motion to Compel Arbitration [DE 10].</u>

Hometown II argues that two arbitration agreements existed between the parties: the Operating Agreement and the Dispute Resolution Program. [DE 10-1 at 98]. Hometown II argues

3

that Hometown acknowledges in the arbitration proceedings with Brown that it was a party to the Operating Agreement.  [*Id.* at 97].  Hometown argues that the Operating Agreement is not valid because neither Hometown nor Hometown II is a party to it.  [DE 14 at 237-38].  Hometown also argues that the Dispute Resolution Agreement is not valid because it only covers employee claims, and Hometown II is not an employee.  [*Id.* at 241-42].  Hometown also argues that Hometown and Hometown II are parties to the License Agreement, which contains a provision stating that Hometown has the right to prosecute infringement of the agreement and has no arbitration provision.  [*Id.* at 238-39].

### A. Standard

Congress enacted the United States Arbitration Act of 1925 ("FAA"), 9 U.S.C.A. § 1-16, and federal and Kentucky law favors enforcing arbitration agreements.  *See Whalen v. Lord & Moses, LLC*, No. CIV. A. 09-192-JBC, 2009 WL 3766327, at *1 (E.D. Ky. Nov. 10, 2009).  The FAA's purpose was to put arbitration agreements "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

Section 4 of the FAA provides that a party may petition a court to compel arbitration.  FAA § 4.  After receiving such a petition, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*  Even so, the Court first "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).  Generally, any doubts about arbitrability should be resolved in favor of arbitration.  *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24–25 (1983)).  "[W]hile we must bear in mind the presumption of arbitrability, the cornerstone of our inquiry rests upon whether we can resolve the instant case without reference to the agreement containing the arbitration clause."  *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008).  "If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise." *Id.*

In determining whether the dispute is arbitrable, the Court first looks to whether the parties formed a valid arbitration agreement.  *See Braxton v. O'Charley's Rest. Properties, LLC*, 1 F. Supp. 3d 722, 725 (W.D. Ky. 2014) ("Such review, the Sixth Circuit advises, requires the Court to determine first whether a valid agreement to arbitrate exists between the parties, and second whether the specific dispute falls within the substantive scope of the agreement.) (internal citations and quotations omitted).  "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," and the necessary showing "mirrors that required to withstand summary judgment in a civil suit."  *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d Cir. 1997)).

If the Court determines that a valid agreement existed, then the Court must determine whether the claim falls within the scope of the arbitration agreement.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985).  Here, the parties dispute whether they were signatories to the Operating Agreement or Dispute Resolution Program and whether the claims arise from these contracts.[1]

---

[1] The contracts refer to Kentucky law and both parties apply Kentucky law in their briefs.  There does not appear to be a genuine dispute over choice of law, and thus the Court applies Kentucky law in its analysis.

The Sixth Circuit has recognized five theories under which a non-party or non-signatory to an arbitration agreement may still be bound to arbitrate disputes arising from it: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).   Common law contract principles—as interpreted by Kentucky courts—govern the applicability of those theories. *See Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (noting that nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles).   Furthermore, "courts considering whether arbitration clauses cover nonparties should neutrally apply the relevant state law that otherwise governs" rather than applying a "pro-arbitration presumption." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–32 (2009)).

### B.  Discussion

Hometown II does not explicitly identify which of the five theories it believes binds the parties to the Operating Agreement, but cites three cases involving agency theory:[2] *Arnold*, 920 F.2d at 1281, *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375 (E.D. Ky. 2006) and *Palazzo v. Fifth Third Bank*, 2011-CA-000034-MR, 2012 WL 3552633 (Ky. App. Aug. 17, 2012).  [DE 10-1 at

---

[2] Hometown II argues in its reply brief that "even if the Court finds that Plaintiff and Hometown II are not parties to the same arbitration agreement, the arbitration agreements are binding upon Plaintiff pursuant to the theories of agency, veil piercing/alter ego and estoppel laid out in *Javitch*." [DE 15 at 360].  The Court does not consider those arguments on veil piercing and estoppel raised for the first time in reply. *See Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004).  Furthermore, the Court does not consider these arguments because Hometown II does not properly support these arguments in its briefing. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)  ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also Singleton v. Astrue*, No. CIV.A. 09-333-GFVT, 2010 WL 6004448, at *3 (E.D. Ky. June 28, 2010), *report and recommendation adopted,* No. CIV. 09-333-GFVT, 2011 WL 843965 (E.D. Ky. Mar. 9, 2011), ("It is well-established that courts are not obligated to consider unsupported arguments inadequately developed in the briefs")  (quoting *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049 (6th Cir. 1994) (Table) (internal quotation marks and formatting omitted)).

98-100].  The plaintiff in *Arnold* sought to avoid arbitration by naming nonsignatory officers and directors of the corporation.  The court held it would "follow the well-settled principle affording agents the benefits of arbitration agreements made by their principal."  *Arnold*, 920 F.2d at 1282.

In both *Kruse* and *Palazzo*, the plaintiff employee signed an arbitration contract, sued her employer and related entities, and defendants moved for arbitration.  *Kruse*, 458 F. Supp. 2d at 382–83; *Palazzo*, 2012 WL 3552633, at *3.  In *Kruse*, the Court determined that a non-signatory agent could enforce an arbitration agreement executed by its principal and signed by the plaintiff employee.  *Kruse*, 458 F. Supp. 2d at 382.  The court in *Kruse* reasoned that "four of the five named defendants . . . are all related entities and stand in the shoes of the party that actually signed the Agreement" and "they are bound by the arbitration clause."  *Id.* at 382–83.  The Court found that the last defendant "repeatedly interfered in Plaintiff's contractual relationship with Defendants" that "[w]here a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration."  *Id.* at 383.

The court in *Palazzo* followed similar reasoning, where both plaintiff and one defendant were signatories to an arbitration agreement: "As in *Kruse*, [the entity defendants] are related entities.  Furthermore, [plaintiff] admitted that she was employed by both entities, and she treated them, for purposes of her complaint, as one entity."  *Palazzo*, 2012 WL 3552633, at *2-3.  As for the last defendant, the Court determined that "[a]ll of these allegedly wrongful acts occurred while [he] was employed by" the entity defendants and "[a]s in *Arnold*, the clear intent of the [contractual] language is to provide a single arbitral forum to resolve all disputes[.]"  *Palazzo*, 2012 WL 3552633, at *3-4.  The court found all three defendants were parties to the arbitration agreement.  *Id.* at 5.

7

Neither Hometown nor Hometown II signed the Operating Agreement and the signatories were not acting as agents. [DE 10-5]. The Operating Agreement was created to form the Hometown II Limited Liability Company, and Hometown is suing this nonsignatory corporation. [*Id.*]. Hometown itself does not appear anywhere in the Operating Agreement. [DE 1; DE 10-5]. There is no language suggesting that the Fosters or Brown were acting in their capacities as agents to bind Hometown or Hometown II to this contract. [DE 10-5]. Rather, the Operating Agreement refers to Brown and the Fosters "each individually also referred to as 'Member' and . . . being all of the initial members" of Hometown II. [*Id.* at 141-74]. Nor does Hometown treat Hometown II as the same entity as Brown in the complaint.[3] [DE 1]. The individuals are not entities related to the Hometown corporations, and the Court cannot conclude that the clear intent was to provide a single arbitral forum when a subsequently executed document—the License Agreement—contradicts that interpretation by providing Hometown has "the right to institute and prosecute actions for infringement[.]" [DE 4-3 at 64]. Brown and the Fosters were not acting as agents of Hometown and Hometown II when signing the Operating Agreement. Additionally, no reference to the Operating Agreement is necessary for Hometown's claims. *NCR Corp.*, 512 F.3d at 814. The Operating Agreement does not serve as an arbitration agreement between the parties for the instant claims.

Kentucky contract law mandates that an unambiguous written instrument "be enforced strictly according to its terms." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). If any ambiguity

---

[3] Hometown II argues that Hometown is pursuing parallel litigation against Brown based on "nearly identical factual allegations as the allegations asserted directly against Hometown II in this litigation." [DE 10-1 at 98]. However, this cuts against their argument that defendants signed the agreement because Hometown is not treating Brown and Hometown II as a single entity for litigation purposes. *See Palazzo*, 2012 WL 3552633, at *3 (the fact that plaintiff treated defendants as one entity for purposes of her complaint factored into the court's finding that defendants stood in the others' shoes).

exists, the Court must determine "the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written." *Id.* Where there is no ambiguity, however, courts should "interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.* Although both Hometown and Hometown II are named in the Dispute Resolution Program, the language of the document makes it clear that the Dispute Resolution Program was not intended to resolve conflicts between the parties. The language of the document shows that it was intended to resolve disputes between either—or both—Hometown or Hometown II and employees. The Dispute Resolution Program is not signed by either party.[4] [DE 10-7]. While it refers to both parties, it groups them into one entity "collectively [] referred to as []the 'Company'." [*Id.* at 188]. The Dispute Resolution Program "is a four-step process for resolving workplace problems quickly and fairly." [*Id.*]. It states that the "PROGRAM IS A CONDITION OF YOUR EMPLOYMENT." [*Id.*]. Even if the Dispute Resolution Program did not define Hometown and Hometown II as the same party, Hometown II as an LLC could not have been an employee of Hometown. The Dispute Resolution Agreement was not intended to resolved conflicts between Hometown and Hometown II. [DE 10-7]. The Dispute Resolution Program cannot serve as an arbitration agreement between the parties.

Furthermore, the License Agreement and the Supply Facilitation Agreement—from which the claims at issue stem—do not incorporate the arbitration language from the Operating Agreement. Under Kentucky law, an agreement only incorporates another contract's terms if it contains "clear language [] express[ing] the incorporation of other terms and conditions[.]" *Dixon v. Daymar Colleges Grp., LLC*, 483 S.W.3d 332, 344 (Ky. 2015) (internal quotation marks

---

[4] The Dispute Resolution Program attached to the Motion appears to be a brochure and is not signed by anyone. [DE 10-7].

omitted) (alterations in original).  Neither of the contracts here contain such clear language.  [DE 4-3; DE 10-3].  The License Agreement contrarily contains a provision stating that Hometown "has the right to institute and prosecute actions for infringement of the Licensed Intellectual Property."  [DE 4-3 at 64].  The Supply Facilitation Agreement is silent on arbitration.  [DE 10-3].  Unlike the Operating Agreement, Hometown and Hometown II are signatories to both the License Agreement and Supply Facilitation Agreement.  [DE 4-3 at 68; DE 10-3 at 113].  Without incorporating this language, the contracts from which this action stem do not compel arbitration.[5]

Therefore, for the reasons above, Hometown II's motion to compel arbitration [DE 10] is **DENIED**.

### III.   <u>Motion to Dismiss [DE 10]</u>

Hometown II argues that the Complaint should be dismissed because Hometown makes only conclusory allegation and thus failed to state a claim for breach of contract and infringement.  [DE 10-1 at 100-01].  Hometown argues that it stated claims for breach of the License Agreement and Supply Facilitation agreements and infringement of intellectual property.  [DE 14 at 257-60].

#### A.   Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court

---

[5] Because the Court has determined that the parties did not have a valid arbitration agreement, the Court does not reach whether the claims arise under this agreement.

need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

**B.  Discussion**

Hometown II argues that Hometown's claims fail because Hometown "has not alleged that Hometown II engaged in any conduct prohibited by" the termination provision in the License Agreement.[6]  [DE 10-1 at 101-02].  Hometown II further argues that it "cannot be an infringer" because the "license agreement has not been terminated."  [*Id.* at 102].

To state a claim for breach of contract, a plaintiff must plead: "(1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff."  *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007).

---

[6] Hometown II argues that Hometown's breach of contract claims fail because it makes only conclusory allegations and that "[a]ll of Hometown, Inc.'s remaining tort and statutory claims flow from the alleged breach of the License Agreement."  [DE 10-1 at 101].  Therefore, the Court will analyze only the elements of a breach of contract claim.

In Kentucky, "an enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997); *Seye v. Richardson*, No. 2:14-CV-38-EBA, 2015 WL 3887053, at *1 (E.D. Ky. June 23, 2015).

Hometown II's argument that Hometown "has not alleged that Hometown II engaged in any conduct prohibited by paragraphs 9(a)(ii) or 9a(iii) of the License Agreement" ignores that Hometown's allegations that Hometown II engaged in conduct prohibited by paragraph 9(a)(i). [DE 10-1 at 101]. Paragraph 9(a)(i) provides:

> (a) Upon the occurrence of any of the following events, Corporation may terminate this Agreement immediately by providing written notice of termination to Licensee:
> (i) Licensee does not comply with any provision of this Agreement and subsequently fails to remedy such breach within 30 days of receiving written notice of such breach from Corporation.

[DE 10-1 at 101].

In the complaint, Hometown set forth allegations of specific terms of the contracts allegedly between Hometown and Hometown II, breach of those contracts, and damages:

> 88. Hometown and Hometown-II entered into a valid and enforceable contract vis-à-vis the License Agreement.

> 89. Under the terms of the License Agreement, upon Mr. Brown's termination from Hometown, Hometown-II is required to cease using all of Hometown's Licensed Intellectual Property within six months. This includes, per the contract's definitions, "tradenames, trademarks, trade secrets, service names, service marks, logos and registrations and the goodwill associated with such property."

> 90. Hometown-II has materially breached the License Agreement by, inter alia, the following:
> a. Purporting to own or otherwise exercise independent control over the Licensed Intellectual Property of Hometown, including the Marks, despite the termination of Mr. Brown's employment more than six months ago in May of 2021;
> b. Continuing to use "Hometown" and "Hometown Pizza" signage at Hometown-II locations and otherwise using Hometown's Marks;

12

    c. Continuing to use Hometown recipes, including the secret pizza spice blend, as well as Hometown menu item names such as the "Hometown Special," "Joe's Special," and the "Colossus Cheese";
    d. Creating the assumed name of "Hometown Craft House" in an intentional and direct attempt to confuse Hometown's customer base and damage Hometown economically;
    e. Including "Good Pizza" in the Hometown Craft House logo in an intentional and direct attempt to confuse Hometown's customer base and damage Hometown economically;
    f. Displaying the "Hometown Pizza" logo on the Hometown Craft House website despite not being affiliated with Hometown any longer and being required to cease usage of such Marks under the License Agreement.

91. Hometown and Hometown-II entered into a valid and enforceable contract vis-à-vis the Supply Facilitation Agreement.

92. Hometown-II breached the Supply Facilitation Agreement by, inter alia, failing to pay Hometown $25,000 per Hometown-II store, for a total of $150,000 for six stores, within the contractually required timeframe.

93. These six stores are the four Hometown Pizza restaurants; the Lynn Family Stadium locations; and the Hometown Brewery locations; all of which are on Hometown-II's corporate books.

94. As a direct and proximate result of Hometown-II's numerous, material breaches of these contracts, Hometown has suffered, and continues to suffer damages, including its attorneys' fees and costs related to this litigation.

[DE 1 at 18-20].

Hometown has pled factual allegations supporting the essential elements of a breach of contract claim. The facts, as pled, allow the court to draw a reasonable inference that Hometown II breached their contractual obligation and are therefore liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678 (citing *Bell*, 550 U.S. at 556).

### III.   <u>CONCLUSION</u>

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS**

**ORDERED** as follows:

(1)   Hometown Pizza II's Motion to Compel Arbitration [DE 10] is **DENIED**;

(2)   Hometown Pizza II's Motion to Dismiss [DE 10] is **DENIED;**

(3)   Hometown's Motion for Leave to File Surreply [DE 16] is **DENIED**;

(4)   The parties will be contacted by the Court's deputy to schedule a preliminary
injunction hearing; and

(5)   The Court will set a hearing for the motion for Preliminary Injunction by separate
order.

Rebecca Grady Jennings, District Judge

United States District Court

April 27, 2022

cc: counsel of record

14