UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HOMETOWN PIZZA, INC.                                                                          Plaintiff

v.                                                                        Civil Action No. 3:22-cv-20-RGJ

HOMETOWN PIZZA II, LLC                                                                     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hometown Pizza, Inc. ("Hometown") moves to disqualify Defendant Hometown Pizza II, LLC's, ("Hometown II") counsel. [DE 18]. Hometown II responded [DE 22], and Hometown replied. [DE 24]. For the reasons below, Hometown's Motion [DE 18] is **GRANTED**.

**I.        BACKGROUND**

Michael and Mary Foster ("Fosters") founded Hometown Pizza, Inc. and operate restaurants under the name "Hometown Pizza." [DE 1 at 3; DE 10-1 at 93]. In July 2010, Thomas Brown ("Brown") contracted with the Fosters to serve as Chief Operating Officer and Vice President of Hometown. [DE 1 at 4; DE 10-1 at 93-94]. At the same time, Brown and the Fosters signed agreements creating Hometown II, and Brown licensed intellectual property from Hometown. [DE 1 at 4; DE 10-1 at 93-94; DE 10-5].

Hometown terminated Brown's employment in 2021, and subsequently terminated their agreements, including their licensing agreements. [DE 1 at 7]. Hometown alleges that Hometown II has continued to use its intellectual property, including its trademarks. [*Id.* at 8-14]. Hometown moved for a preliminary injunction against Hometown II, to prevent Hometown II from using Hometown's intellectual property. [DE 4]. Hometown subsequently moved for disqualification

1

of Hometown II's counsel [DE 18], which the Court must resolve prior to scheduling a preliminary injunction hearing.

## II. STANDARD

District Courts have broad discretion over whether counsel should be disqualified. *See Moses v. Sterling Com. (Am.), Inc.*, 122 F. App'x 177, 183 (6th Cir. 2005). "[D]isqualification is a drastic measure which courts should be hesitant to impose except when absolutely necessary." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001), *as amended* (Aug. 29, 2001). Courts must confront motions to disqualify counsel cautiously, as "the ability to deny one's opponent the services of capable counsel, is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988).

"[T]he Kentucky Rules of Professional Conduct are the 'persuasive authority, if not governing standards, for practice before [the Western District of Kentucky].'" *Kittel v. C-Plant Fed. Credit Union*, No. 5:08-CV-00114-R, 2010 WL 292689 (W.D. Ky. Jan. 20, 2010) (citing *Carlsen v. Thomas*, 159 F.R.D. 661, 664 (E.D. Ky. 1994)). The Kentucky Rules of Professional Conduct, contained in Kentucky Supreme Court Rule 3.130 ("Rule"), guide this court's review of the conduct at issue:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation;
>
> ...
>
> (c) A lawyer who has formerly represented a client in a matter of whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known; or

>     (2) reveal information relating to the representation except as Rule 1.6 or
>         Rule 3.3 would permit or require with respect to a client.

Rule 1.9 (a)-(c). Additionally, Rule 1.10, entitled "Imputed disqualification: general rule," governs disqualifications which may be imputed to an entire firm:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.
> (b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>     (1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>     (2) Any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.
> (c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.
> (d) A firm is not disqualified from representation of a client if the only basis for disqualification is representation of a former client by a lawyer presently associated with the firm, sufficient cause that lawyer to be disqualified pursuant to Rule 1.9 and:
>     (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no specific part of the fee therefrom; and
>     (2) written notice is given to the former client.

Rule 1.10.

The Sixth Circuit has enunciated a three-part test for courts to use in analyzing whether counsel should be disqualified: whether "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (citing *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 440 F. Supp. 193, 207 (N.D. Ohio 1976), *aff'd sub nom. City of Cleveland v. Cleveland Elec. Illuminating*, 573 F.2d 1310 (6th Cir. 1977)).

### III.     DISCUSSION

Hometown argues that Hometown II's counsel, Amy Sullivan Cahill ("Cahill") and her law firm, Steptoe & Johnson, PLLC, "must be disqualified from this action because she herself was the trademark and intellectual property attorney for Plaintiff, Hometown, with respect to the very trademarks that are at issue here." [DE 18-1 at 376 (emphasis omitted)]. Hometown II argues that while Cahill represented Hometown in renewing its trademark, she "never obtained any confidential information related to the operation of Hometown" from her "mere association with" her firm at the time. [DE 22 at 457-60].

It is undisputed that Cahill represented Hometown in the past for at least the renewal of its trademarks. [*Id.* at 458]. Therefore, the first prong of the *Dana Corp* test is met. 900 F.2d at 889.

Under the second prong of the *Dana Corp* test, when determining whether the attorney-client relationships are "substantially related," a district court looks to "the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now-adverse client." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013). "'What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. Consequently, the representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.'" *Id.* (quoting with approval *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)); *see also* Rule 1.9 cmt. 3 ("matters are substantially related . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.").

"[T]he former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." *Bowers*, 733 F.3d at 651 (quoting Rule 1.9 cmt. 3). "This analysis essentially makes the final two prongs of Dana Corp interdependent on one another." *Dirksing v. Safeco Ins. Co. of Illinois*, 544 F. Supp. 3d 767, 771 (E.D. Ky. 2021).

Hometown argues Cahill's prior representation is substantially related because she represented Hometown "over many years with respect to Hometown's Licensed Intellectual Property, including" all three trademarks involved in this matter. [DE 18-1 at 383-84]. Hometown II responds that this was not substantially related because Cahill's representation involved only the renewal of Hometown's trademarks, which "is a narrow and finite task," involving "only publicly available information." [DE 22 at 459-60]. Of course, not all trademark matters are substantially related, and the Court cannot conclude that simply because both matters involved trademarks that they are substantially related, even if they involve the same trademarks.[1]

More notable is Cahill's representation of Hometown during her time at Cahill IP. Hometown provides a cease and desist letter Cahill sent on its behalf, which states, "this firm [Cahill IP] represents Hometown . . . in matters of intellectual property."[2] [DE 24 at 486; 24-1]. The letter explains to the recipient how they are infringing on Hometown's trademarks—the same three trademarks involved in this matter. [DE 24-1 at 492-4]. While representing Hometown in

---

[1] Neither party disputes the validity of the trademarks.
[2] The Court notes that while Hometown submitted this letter with its Reply, Hometown made this argument (that Cahill represented Hometown in trademark enforcement matters) in its motion and thus, the issue was not raised for the first time in a reply to which Hometown II did not have the opportunity to respond. *See* [DE 18 at 383-85]. And Hometown II did not request leave to file a sur-reply. *See Dirksing*, 544 F. Supp.3d at 773 (citing *Seay v. Tennessee Valley Auth.*, 339 F.3d 454 (6th Cir. 2003), considering new evidence in a reply brief, and finding "[n]ineteen days was a more than adequate amount of time for defendants to review [a] new submission and then file a brief motion for leave to file a sur-reply or even a motion to strike."). Thus, it is appropriate for the Court to consider the letter.

5

these trademark enforcement matters Cahill would have been exposed to confidential client information related to Hometown's trademark enforcement. Hometown argues that in over a decade as a lawyer for Hometown, Cahill was specifically acquired confidential information about "potential decisions of applying for trade or service marks, results thereof, potential strategies for same, any potential legal issues relating to the Marks, and more." [DE 18-1 at 386]. Cahill's former representation enforcing Hometown's trademarks is substantially related to Hometown's instant litigation seeking to enforce its trademarks and the confidential information Cahill would have received about Hometown's trademark enforcement in their prior relationship could materially advance Hometown II's position in this matter. *Bowers*, 733 F.3d at 651; Rule 1.9 cmt. 3. *See also HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 760 (S.D.W. Va. 2003) (attorney's letter discussing the "legal implications" of client's trademark was "substantially related" to client's later trademark enforcement litigation); *and LeapFrog Enterprises, Inc. v. Epik Learning*, LLC, No. 16-CV-04269-EDL, 2017 WL 2986604, at *12 (N.D. Cal. Feb. 23, 2017) (finding firm had obtained confidential information and representations were substantially related where client had been with firm for approximately a decade, giving insight into client's trademark infringement "playbook").

  Hometown II also cites comment 4 to Rule 1.9 "that many lawyers to some degree limit their practice to one field or another. . . If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel." Rule 1.9, cmt 4. Because Cahill previously represented Hometown in a trademark matter, this citation contradicts Hometown II's argument that this case is wholly a contract matter unrelated to the trademark matters. That is, as reflected in the briefing, attorney Cahill specializes in—or to some degree

6

limits her practice to—intellectual property. If this matter involved only contract law, there would be little reason for Cahill to be involved with the case.

Thus, as Cahill's role in enforcing Hometown's trademarks—the subject matter of her former relationship with Hometown—is substantially related to the matter now before the Court in which Hometown seeks to enforce its trademarks, the second prong of the *Dana Corp* test is satisfied. And as there is a substantial risk that confidential factual information was obtained in the prior representation that would be materially adverse to Hometown here, prong three of the *Dana Corp* test is met.[3] Therefore, as all three prongs of the *Dana Corp* test have been met, Cahill must be disqualified from representing Hometown II. *See Kearns v. Fred Lavery/Porsche Audi Co.*, 573 F. Supp. 91 (E.D. Mich. 1983), *aff'd sub nom. Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600 (Fed. Cir. 1984) (Attorney disqualified from representing defendants in patent infringement case when he had consulted with plaintiff in a suit against different defendants for infringement of the same patents).

As Cahill is disqualified from representing Hometown II, the Court must consider whether her disqualification should be imputed to her entire firm, Steptoe & Johnson. Rule 1.10(a) provides "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." Under this rule, Cahill's disqualification must be imputed to her entire firm. "This is necessary in order to protect the 'reasonable expectations of former and present clients' and 'promotes the public's confidence in the integrity of the legal profession.' *Dirksing*, 544 F. Supp.

---

[3] Hometown also argues that Cahill was an attorney at Sites and Harbison when the firm prepared the contracts at issue. [DE 18-1 at 384]. The Court does not consider this argument further, as it was unnecessary to the outcome of the substantial relation and confidential information prongs.

3d at 773 (citing *Republic Servs., Inc. v. Liberty Mut. Ins. Co.*, No. CIVA 03-494 KSF, 2006 WL 3004014, at *11 (E.D. Ky. Oct. 20, 2006).

## IV. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Hometown's Motion to Disqualify [DE 18] is **GRANTED** and the firm of Steptoe & Johnson is **DISQUALIFIED** from representing Defendant Hometown II in this matter;

(2) All deadlines and proceedings are **STAYED** for 60 days, to provide time for Defendant Hometown II to retain new counsel

(3) Defendant Hometown II **must** enter an appearance of new counsel within 60 days of entry of this Order;

(4) Following the notice of appearance of new counsel on behalf of Defendant Hometown II, the parties will be contacted by the Court's deputy to schedule a preliminary injunction hearing; and

(5) The Court will set a hearing for the motion for Preliminary Injunction by separate order.

Rebecca Grady Jennings, District Judge
United States District Court

July 1, 2022

cc: counsel of record

8